**IN THE COURT OF APPEALS OF IOWA**

No. 23-0326
Filed June 7, 2023

**IN THE INTEREST OF L.W., T.S., and A.A.,**
**Minor Children,**

**M.A., Father,**
        Appellant,

**T.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Carrie K. Bryner,

District Associate Judge.


        A mother and father separately appeal the termination of their parental

rights.  **AFFIRMED ON BOTH APPEALS.**


        Deborah M. Skelton, Tiffin, for appellant father.

        Mark D. Fisher of Howes Law Firm, P.C., Cedar Rapids, for appellant

mother.

        Brenna Bird, Attorney General, and Mackenzie L. Moran, Assistant Attorney

General, for appellee State.

        Julie Gunderson Trachta of Linn County Advocate, Cedar Rapids, attorney

and guardian ad litem for minor children.


        Considered by Bower, C.J., and Tabor and Greer, JJ.

**BOWER, Chief Judge.**

A mother and father separately appeal the termination of their parental rights. The father challenges the grounds for termination and claims termination is not in the children's best interests. The mother asserts termination is not in the best interests of the children and the court failed to apply an exception to termination. We affirm on both appeals.

**I. Background Facts & Proceedings.**

T.S. is the mother of L., born in 2014; T., born 2016; and A., born in 2019.[1] L.'s father is I.W.[2] We will refer to T. and A.'s father as "the father" for purposes of this appeal.

A. tested positive for marijuana at birth in early 2019. The police also visited the family home several times through 2019 due to the mother's involvement in physical altercations, concerns of her supervision of the children, and reports of delinquent behaviors by two of her older children. These events brought the family to the attention of the Iowa Department of Health and Human Services (the Department). Petitions to declare each child a child in need of assistance (CINA) were filed in December, and in March 2020, the children were each adjudicated as CINA.

In late April, after a car accident, the mother was arrested for a variety of drug and traffic offenses. The father was in the vehicle at the time, and law enforcement determined he was also under the influence of drugs or alcohol so

---

[1] T.S. has several older children, including two minor children older than L., who were placed under guardianships and are not part of this appeal.
[2] I.W.'s parental rights were also terminated. He did not appeal.

the children could not be placed with him. The children were removed from parental care on April 27. At the time of removal, L. tested positive for cocaine and T. tested positive for THC; A.'s hair was too short for testing.

In December, the mother was intoxicated and hit the father with a baseball bat. In May 2021, the mother was incarcerated for offenses relating to her 2020 vehicle accident.

A hearing to terminate the parents' rights began in September 2021. At that time, neither parent had consistently participated in drug tests, nor had the mother cooperated in substance-abuse treatment. The father stopped using marijuana but continued to drink alcohol to excess despite being told treatment would not work if he drank.

In December, the mother filed a motion to reopen the record, informing the court of her progress through substance-abuse treatment, her new employment, and her efforts to follow the court's orders. At the end of January 2022, the father filed a similar motion. The court granted the motions in February, and in March the court granted the parents an additional three months to achieve reunification.

During the reunification extension, the father made progress, and his visitation moved from supervised to semi-supervised and then unsupervised.[3] In July, the court authorized a trial home visit for T. and A. with their father, and the court ordered no contact between the mother and father.[4]

---

[3] The mother did not consistently progress—she reportedly drank to excess and was selling marijuana.
[4] L. remained in a relative placement.

Once T. and A. were living with their father, the mother made progress with housing, completed substance-abuse treatment, obtained employment, and improved her parenting with the children.

In October, law enforcement was called to the father's home.[5] The father reported the mother threatened him with a knife.[6] When the father ran outside to call 911, she took the children and left. Neither parent informed the Department or the court of the incident at a pretrial hearing just two days later. When the Department followed up about the incident, the children reported the father drank alcohol on a regular basis and the mother was at the home often. The mother was arrested for assault. T. and A. were removed from the father again and placed in family foster care. After the removal, the father was not cooperative with the foster family or the Department.

Additional reports to the Department around the same time alleged the father was using cocaine in his home when he had T. and A. living with him. T.'s hair was tested for drugs at the October removal and was positive for methamphetamine and cocaine.[7] A hair test of the father collected a few days after the removal came back positive for methamphetamine, ecstasy, and cocaine and related metabolites.

---

[5] Records show a number of calls to law enforcement to the father's home during the trial home visit, including at least one alleging the father was intoxicated and ringing neighbors' doorbells.

[6] At the termination hearing, the mother denied having been at the father's home and said she has not had contact with him since the July no-contact order.

[7] A.'s hair was too short to test.

After completing the termination hearing in November, the court terminated the mother's rights to L. and T. under Iowa Code section 232.116(1)(f) (2021),[8] and to A. under section 232.116(1)(h).[9] The father's rights to T. and A. were also terminated under Iowa Code section 232.116(f) and (h).

The mother and father separately appeal.

## II. Standard of Review.

"We review termination of parental rights proceedings de novo." *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). The termination of each parent's "rights are separate adjudications, both factually and legally." *Id.* at 171 (citation omitted). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

---

[8] Termination under section 232.16(1)(f) requires the court find the following:
    (1) The child is four years of age or older.
    (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[9] Termination under section 232.116(1)(h) requires the court find the following:
    (1) The child is three years of age or younger.
    (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

**III. Analysis.**

> Termination of parental rights under chapter 232 follows a three-step analysis. First, the court must determine if a ground for termination under section 232.116(1) has been established. If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.

*Id.* at 706–07 (internal citations omitted). We need not discuss the steps of analysis not challenged by the parent. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

Here, the father challenges the first two steps of the analysis. The mother challenges the second and third steps.

*A. Grounds for termination.* The father's parental rights were terminated as to T. under Iowa Code section 232.116(1)(f), and as to A. under paragraph (h). The father concedes the State established the first three elements but asserts the State did not prove by clear and convincing evidence the children could not be returned to his care.

T. and A. were on a trial home visit in the father's care for over three months. However, in the last weeks before their second removal, the father allowed the mother into the house in spite of a no-contact order, at which time he alleges she assaulted him with a knife. The father was reported to be using cocaine, and an October hair stat test of the six-year-old child revealed ingestion of methamphetamine and cocaine while in his care. We do not know if the younger child also ingested drugs, as the child's hair was too short to test. The father's test

results came back after the trial (but the court held the record open for the results), and they showed he ingested methamphetamine, ecstasy, and cocaine. Under these circumstances, the State proved by clear and convincing evidence the children could not be returned to the father's care.

*B. Best interests.* Our best-interests analysis gives "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "[I]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (alteration in original) (citation omitted).

The father asserts he loves the children, they love him, he can meet their physical and emotional needs, and placement with him "poses no appreciable risk of adjudicatory harm," so there is no authority permitting the termination of his parental rights. This family has been involved with the Department since 2019. This case has already been extended far beyond the statutory time period,[10] and the father had been entrusted to care for the children and show he could protect them from drugs in their home environment. He failed. "Children simply cannot wait for responsible parenting," *id.* (citation omitted), and these children have been waiting for three years for a safe and stable home. Termination of the father's parental rights is in the children's best interests.

---

[10] *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency.").

The mother argues her close bond with the children and their sibling bond means termination of her rights would harm them and would affect the sibling bond between L. and the other two children. Our legislature recognized that sibling relationships should be considered when making a determination of each child's best interests. *See* Iowa Code § 232.108. The legislature also recognized a need for continuing those relationships even beyond the termination of parental rights, allowing a sibling to file a request for visitation and encouraging sibling visitation and training adoptive placements of the importance of continuing the sibling ties. *See id.* While the preference is important, it is but one factor in our consideration. *See In re K.A.*, No.18-0232, 2018 WL 1633524, at *3 (Iowa Ct. App. Apr. 4, 2018). In addition, none of the mother's other children are in her care—they are either adults or in guardianships, lessening the impact termination of the mother's parental rights would have on the sibling relationships.

At the time the termination hearing concluded, the children had been out of the mother's custody for more than two-and-one-half years. She was incarcerated for a portion of that period, including on the final day of the termination hearing. She showed irregular progress throughout the case. Although she loves her children and they love her, on this record we find the mother cannot provide a safe and stable home providing for the children's current needs and long-term growth. Termination of her rights is in the children's best interests.

*C. Exception to termination.* The mother asserts the juvenile court erred in not considering her close bond to the children as an exception to termination under

Iowa Code section 232.116(3)(c).[11]  "The exceptions in section 232.116(3) are permissive, not mandatory."  *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021) (internal quotation marks and citation omitted).  "[T]he parent resisting termination bears the burden to establish an exception to termination . . . ."  *A.S.*, 906 N.W.2d at 476.  "[T]he existence of a bond is not enough.  The law requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'"  *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (citation omitted).  The children here are young and have been out of the mother's care since April 2020, with only supervised visits since the removal.  We find the mother has not met her burden to show the termination of parental rights would be detrimental to the children.

**AFFIRMED ON BOTH APPEALS.**

---

[11] Iowa Code section 232.116(3)(c) provides "The court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."